USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 7 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jasmyn Santana,

Plaintiff,

–v–

Weill Cornell Medicine Primary Care,

Defendant.

17-CV-7420 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

On December 26, 2017, Defendant moved to dismiss portions of the amended complaint in this case. Dkt. No 26. For the following reasons, Defendant's motion is granted.

## I. Background

On a Rule 12(b)(6) motion, a court must take the facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74 (2d Cir. 2013). Accordingly, the following statement of facts is drawn from the amended complaint. Dkt. No. 24 ("Am. Compl.").

Plaintiff Jasmyn Santana was employed by Defendant Weill Cornell Medicine Primary Care from April 2015 through July 2016. Am. Compl. at ¶¶ 11, 18, 56. Plaintiff worked as a full time employee in the women's health department as the on-site Registered Nurse to four OBGYN providers. Am. Compl. at ¶ 18-19.

In July 2015, Plaintiff learned that she was pregnant. Am. Compl. at ¶ 25. She suffered from several pregnancy-related conditions such as "episodes of cramping and contractions, ligament pain, back pain, neck pain, and periodic muscle spasms in her legs." Am. Compl. at ¶ 26. Plaintiff consulted with a physical therapist, who recommended that Plaintiff not sit for long

periods of time, and change positions routinely. Am. Compl. at ¶¶ 27-28. After giving birth to her son, Plaintiff was diagnosed with De Quervain's tenosynovitis, which affected the movement of her hands and wrists, including her ability to type or write. Am. Compl. at ¶ 29. Plaintiff had also previously been diagnosed with an ectopic pregnancy in December 2014. Am. Compl. at ¶ 23.

According to the amended complaint, on November 10, 2015, Plaintiff disclosed her pregnancy to Defendant. Am. Compl. at ¶ 30. On December 14, 2015, Plaintiff submitted a request for a reasonable accommodation, along with the relevant medical documentation, to Defendant. Am. Compl. at ¶ 31. The request included that Plaintiff not lift more than ten pounds, that Plaintiff not sit for long periods of time, and that Plaintiff be given adequate breaks which included lunch breaks, bathroom breaks, and breaks for circulation. Am. Compl. at ¶ 31. On December 18, 2015, Plaintiff received a letter from the manager of Employee Relations and Diversity at Weill Cornell Medicine Primary Care denying her request. Am. Compl. at ¶ 32.

In her amended complaint, Plaintiff alleges a dispute regarding her lunch break after she disclosed her pregnancy. Plaintiff's "normal routine" when she took her hour-long lunch break was to inform the billing manager and the medical assistants that were stationed by her office. Am. Compl. at ¶ 38. After Plaintiff disclosed her pregnancy, she was instructed to send a staff message announcing that she would be going to lunch, and to reach out to other off-site nurses to watch her work flow while she was gone. Am. Compl. at ¶ 39. In November 2015, Plaintiff contacted the Employee Relations and Diversity manager who explained that she was "entitled to one hour lunch" as an "exempt employee." Am. Compl. at ¶ 40. After this conversation, Plaintiff contacted the New York State Department of Labor, who confirmed Plaintiff was an exempt employee, and as such, was entitled to at least half hour lunch breaks. Am. Compl. at ¶

41. On November 23, 2015, Plaintiff notified her office manager via email that she had contacted New York State Department of Labor and the HR department "regarding issue [sic] with lunch break labor laws." Am. Compl. at ¶ 42. Thereafter, the manager of Employee Relations and Diversity "retracted his initial statements regarding Plaintiff's right to lunch break [sic]." Am. Compl. at ¶ 42.

Plaintiff was asked by her office manager numerous times to retract her November 23, 2015 email and to send a follow-up email that stated her initial email was sent "out of frustration and misunderstanding." Am. Compl. at ¶ 49. Plaintiff refused. Am. Compl. at ¶ 49. After her refusal, Plaintiff experienced more critical supervision by managers at the hospital. Am. Compl. at ¶ 49. There were "increased comments and micromanaging," and the managers "frequently had meetings with Plaintiff to reprimand and threaten Plaintiff with disciplinary action." Am. Compl. at ¶ 49. At the end of November 2015, Plaintiff was instructed by her office manager verbally and in writing not to use the office break room, or to use her personal office for lunch breaks—instead, she had to leave the office during lunch. Am. Compl. at ¶ 50. According to the amended complaint, other employees were allowed to have lunch in patient walk areas, the break room, and their own offices. Am. Compl. at ¶ 50. Her office manager complained that Plaintiff put a "lunch" sign on her door when she left the office for lunch. Am. Compl. at ¶ 51. In December 2015 and January 2016, Plaintiff reported her office manager's actions to human resources, but no intervention occurred. Am. Compl. at ¶ 52.

On April 4, 2016, Plaintiff filed a charge with the EEOC, alleging discriminatory conduct by Defendant. Am. Compl. at ¶ 43. On June 7, 2016, Plaintiff had a meeting with the operations manager at the hospital. Am. Compl. at ¶ 44. According to the amended complaint, the operations manager was hostile to Plaintiff, and he initiated a negative review of her during this

meeting. Am. Compl. at ¶ 44. Plaintiff's prior performance review was drastically different than this review. Am. Compl. at ¶ 45. Previously, Plaintiff had received "exemplary comments." Am. Compl. at ¶ 45. The operations manager also "made comments in front of other staff and in area of patient care [sic] regarding Plaintiff pumping in her office." Am. Compl. at ¶ 44. After this incident, Plaintiff filed a complaint with the New York State Department of Labor. Am. Compl. at ¶ 46. She also contacted human resources to verify the rules on pumping in the office. Am. Compl. at ¶ 47.

Plaintiff also alleges in her amended complaint that in November 2015, her office manager advised Plaintiff to process her Family Medical Leave Act (FMLA) forms, even though Plaintiff had been absent from work recently due to the hospitalization of her mother-in-law, and not because of her pregnancy. Am. Compl. at ¶ 33. Plaintiff requested a four-day leave of absence to give birth to her son in March 2016. Am. Compl. at ¶ 34. Her planned return date was March 14, 2016—however, Plaintiff could not return that day, as she was in labor. Am. Compl. at ¶ 34. According to the complaint, "Defendant initiated Plaintiff's FMLA leave during her approved vacation leave." Am. Compl. at ¶ 35. On June 1, 2016, Plaintiff returned to work. Am. Compl. at ¶ 36.

On July 27, 2016, Plaintiff felt she was forced to resign due to the harassment, discrimination, and retaliation she was facing at work. Am. Compl. at ¶ 56. Plaintiff alleges that she was constructively terminated. Am. Compl. at ¶ 1. Plaintiff experienced anxiety and depression as a result of her hostile work environment. Am. Compl. at ¶ 56.

Plaintiff alleges eight causes of action in the amended complaint: (1) Discriminatory treatment under the Americans with Disabilities Act (ADA) (2) Failure to Accommodate under the ADA (3) Retaliation under the ADA (4) Retaliation and Interference under the FMLA (5)

Violation of New York Labor Law on Retaliation (6) Breach of Contract (7) Age and/or Disability Discrimination under New York Law (8) Disability Violation of New York City Human Rights Law. Am. Compl. at ¶¶ 61-115. Defendant, in its motion, moved to dismiss Counts 3-6, and the age discrimination claim in Count 7. *See* Dkt. Nos. 26, 29. At the initial pretrial conference, the age discrimination claim was, on consent, dismissed with prejudice. Dkt. No. 48, Tr. of January 12, 2018 Initial Pretrial Conference at 11.

Plaintiff first filed her complaint as a *pro se* litigant in the Eastern District of New York. *See* Dkt. No. 1. The case was later transferred to the Southern District of New York. Dkt. No. 10. Plaintiff also obtained counsel, who continues to be retained in this case. *See* Dkt. No. 7. On November 27, 2017, Defendant moved to dismiss the complaint. Dkt. No. 17. Plaintiff filed an amended complaint on December 19, 2017. Dkt. No. 24. On December 26, 2017, Defendant filed a partial motion to dismiss the amended complaint. Dkt. No. 26. Plaintiff then moved to file a second amended complaint. Dkt. No. 45. The Court denied Plaintiff's request and set a briefing schedule to respond to Defendant's partial motion to dismiss. Dkt. No. 50. On February 9, 2018, Plaintiff filed an opposition to Defendant's motion. Dkt. No. 52. And on February 16, 2018, Defendant filed a reply brief in support of its motion. Dkt. No. 54.

## I. Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Pleadings that contain no more than conclusions are not entitled to the assumption of truth otherwise

applicable." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (citations omitted).

In resolving a motion to dismiss, review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). To the extent a plaintiff raises additional factual assertions in her opposition papers that were not included in the complaint, the Court does not need to consider them for purposes of resolving the motion to dismiss. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000).

**II. Plaintiff's ADA Retaliation Claim**

Plaintiff alleges a retaliation claim under the ADA. Am Compl. at ¶¶ 80-84. The Second Circuit has identified four elements for a *prima facie* case of retaliation under the ADA: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 250 (S.D.N.Y. 2015) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)). A plaintiff engages in protected activity under the ADA if she "has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

Here, Plaintiff's dispute regarding her lunch break was not a protected activity under the ADA. Plaintiff alleges that she contacted the New York Department of Labor regarding her lunch break allotment and then sent an email that she had "contacted the New York State

Department of Labor and the HR department regarding issue with lunch break labor laws." Am. Compl. at ¶¶ 41-42. Plaintiff does not allege that she was opposing any act or practice made unlawful by the ADA, nor does she allege that Defendant's actions were tied to her sex, pregnancy, or disability. And in her amended complaint, Plaintiff makes clear that Defendant's hour-long lunch break was in compliance with the requisite labor laws. *See* Am. Compl. at ¶¶ 37-42. Accordingly, Plaintiff's action surrounding her lunch break was not a protected activity under the ADA. Therefore, her lunch break dispute cannot serve as the basis for an ADA retaliation claim.

Even assuming, *arguendo*, that Plaintiff's actions regarding pumping in her office constitute a protected activity under the ADA, Plaintiff fails to allege the other elements of a *prima facie* case for retaliation. Nowhere in Plaintiff's amended complaint does she allege that she informed Defendant, or that Defendant could otherwise have known that she had contacted the New York Department of Labor in June 2016 to inquire about nursing in the workplace. *See* Am. Compl. at ¶¶ 46-47. Nor does Plaintiff allege that Defendant had knowledge that Plaintiff subsequently filed a complaint with the New York Department of Labor. *See* Am. Compl. at ¶¶ 46-47. Therefore, Plaintiff is unable to allege that she suffered an adverse employment action from an activity of which Defendant had knowledge. *Cf. Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (to satisfy knowledge requirement of the second element of the *prima facie* case, all that is required is general corporate knowledge that the plaintiff has engaged in a protected activity). Because the amended complaint does not allege that Defendant had knowledge of Plaintiff's protected activity, Plaintiff cannot make out the other elements of the *prima facie* case.

Accordingly, Plaintiff has not sufficiently alleged an ADA retaliation claim.[1]

## III. Plaintiff's New York Labor Law Retaliation Claim

Plaintiff also alleges a retaliation claim under New York Labor Law. Under New York Labor Law, a plaintiff must adequately plead that "while employed by the defendant, he or she made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 238 (S.D.N.Y. 2013). New York Labor law also "expressly protects a complaint to an employer." *Payano v. CompassRock Real Estate LLC*, No. 13-cv-7967 (DLC), 2014 WL 1909536 at *3 (S.D.N.Y. May 12, 2014).

For the same reasons as discussed above, Plaintiff has not sufficiently alleged a New York Labor Law retaliation claim. Plaintiff has not alleged in her amended complaint that she made a complaint about Defendant's violation of New York Labor Law regarding the length of her lunch break. Nor has Plaintiff alleged that Defendant had knowledge of her complaint to the New York Department of Labor regarding the operations manager's comments about pumping in the office. While Plaintiff inquired to human resources on an unspecified date to "verify the HR rules on pumping in the office," Am. Compl. at ¶ 47, nowhere in Plaintiff's amended complaint does she allege that she filed a complaint with her employer regarding the operations manager's comments.

Accordingly, Plaintiff has not sufficiently alleged a New York Labor Law retaliation claim.

[1] The Court notes that Plaintiff writes in her opposition brief that "Plaintiffs retaliation claim fares no better than her other ADA claims: the Complaint is bereft of factual allegations that give rise to a reasonable inference that FSA retaliated against plaintiff for engaging in a protected activity." Dkt. No. 52 at 13. As this argument suggests Plaintiff's own retaliation claim is insufficient to survive a motion to dismiss, the Court assumes that this line was included erroneously.

## IV. Plaintiff's FMLA Claims

In her amended complaint, Plaintiff alleges an interference and retaliation claim under the FMLA. For the following reasons, Plaintiff does not sufficiently allege either claim.

### a. Plaintiff's Interference Claim

To prevail on an FMLA interference claim, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Plaintiff has not plausibly alleged an interference claim under the FMLA. At issue is whether or not Plaintiff was denied benefits to which she was entitled to under the FMLA. The amended complaint states that Plaintiff requested a four-day leave of absence based on her available vacation days in order to give birth. Am. Compl. at ¶ 34. And that in March 2016 "Defendant initiated Plaintiff's FMLA leave during her approved vacation leave." Am. Compl. at ¶ 35. On the face of the amended complaint, it is unclear if or how Plaintiff is alleging that Defendant denied her FMLA benefits. In her opposition brief, Plaintiff elaborates that "Defendant illegally substituted vacation days as FMLA without any notice." Dkt. No. 52 at 23. However, the Court must not rely on "factual allegations contained in legal briefs or memoranda" and must only look at the amended complaint. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Plaintiff's amended complaint does not support the allegation that she was denied any benefit under the FMLA, as it seems to suggest that Defendant *did* provide Plaintiff with FMLA benefits. Accordingly, her interference claim must be dismissed. *See Sarno v. Douglas Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 161-62 (2d Cir. 1999) (holding

that the plaintiff failed to establish an interference claim because plaintiff was not denied any benefit he was entitled to).

**b. Plaintiff's Retaliation Claim**

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must sufficiently allege that she: "(1) [] exercised rights protected under the FMLA" " (2) was qualified for [her] position" (3) "suffered an adverse employment action" and (4) "the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Plaintiff has not sufficiently alleged a retaliation claim. Plaintiff pleads that she suffered an adverse employment action, the "constructive termination" of her employment, as a result of the work conditions she faced. Am. Compl. at ¶ 1. The Second Circuit has made clear that "a constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of [her] work…or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993). Working conditions are intolerable when "viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003). And, "the employee must show that her employer acted 'deliberately' to make working conditions intolerable." *LeeHim v. New York City Dep't of Educ.*, No. 17-cv-3838 (PAE), 2017 WL 5634128, at *5 (S.D.N.Y. Nov. 21, 2017) (citing *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007)).

Plaintiff's allegations in her amended complaint do not sufficiently allege a constructive discharge. Plaintiff's allegations about her work environment do not meet the threshold as

outlined in *Terry*. 336 F.2d at 152. In *Martin v. Citibank, N.A.*, for example, the Second Circuit held that a plaintiff could not sustain a constructive discharge claim based on allegations that she had resigned because her supervisor embarrassed her in front of other colleagues, criticized her, and interfered with her ability to perform some of her work. 762 F.2d 212, 221 (2d Cir. 1985). Plaintiff's allegations do not even rise to the level of work conditions outlined in *Martin*. 762 F.2d at 221. Nor has Plaintiff alleged any facts that suggest anyone in her work environment acted deliberately to make her working conditions intolerable. Accordingly, Plaintiff has not sufficiently alleged that she suffered an adverse employment action after exercising her rights under the FMLA. Her FMLA retaliation claim is therefore dismissed.

## V. Plaintiff's Breach of Contract Claim

In her amended complaint, Plaintiff also raises a breach of contract claim, alleging that Defendant failed to abide by an implied promise to treat Plaintiff fairly and in good faith during the course of her employment. *See* Am. Compl. at ¶ 103. This claim also fails. Under New York law, a plaintiff claiming a breach of contract must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Nowhere in Plaintiff's amended complaint does she allege anything about an employment contract with Defendant. Plaintiff argues in her opposition brief that she "relied upon Defendant's expressed written anti-discrimination policy," and that by "failing to honor its expressed policies and implied duty of good faith and fair dealings," Plaintiff's constructive termination amounted to a material breach of a contract. Dkt. No. 52 at 26. Plaintiff's amended complaint contains no discussion of the written anti-discrimination policy—it is only raised in the opposition brief. The Court need not consider it. *Friedl v. City of*

*New York*, 210 F.3d 79, 83 (2d Cir. 2000). Therefore, Plaintiff has not sufficiently alleged the existence of a contract that Defendant could have breached.

Accordingly, Plaintiff's breach of contract claim is dismissed.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Counts 3-6 is GRANTED. Plaintiff has already amended her complaint once in response to Defendant's first motion to dismiss. *See* Dkt. Nos. 17, 24. And the Court has already denied Plaintiff's request to file a second amended complaint. Dkt. No. 50. Accordingly, the claims are dismissed with prejudice. This resolves Docket Number 26.

SO ORDERED.

Dated: September 27, 2018
New York, New York

ALISON J. NATHAN
United States District Judge